LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CRYSTAL DE SOUZA,<br><br>               Plaintiffs,<br><br>     *v.*<br><br>WRIGHT STATE UNIVERSITY,<br>DANIEL MONAGHAN,<br>RICHARD THOMAS, and<br>SANDY NAPIER<br><br>         Defendants. | Case No.<br><br>      **COMPLAINT**<br>   <u>DEMAND FOR JURY TRIAL</u><br><br><br>Judge ----------------<br>Magistrate Judge --------------- |

Now Comes Plaintiff, Crystal De Souza ("Plaintiff De Souza") by and through her Attorney, Michael L. Fradin, Attorney at Law, and brings this action against Defendant Wright State University ("Defendant University") for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and violations of Ohio state law that declare workplace gender and racially-based harassment and discrimination to be unlawful. Plaintiff also brings this action under 42 U.S.C. § 1983 ("1983") against Daniel Monaghan ("Defendant Monaghan"), Richard Thomas ("Defendant Thomas"), and Sandy Napier ("Defendant Sandy Napier") in their individual capacities for violations of Plaintiff's right to equal protection, as

applicable to Plaintiff, based on the grounds of sex and race, while acting in their individual capacities under color of law.

The severe, pervasive and objectively offensive gender and race-based discrimination, sexual harassment, and verbal sexual and racial abuse to which Plaintiff was subjected, coupled with Defendants' deliberate indifference and clearly unreasonable response to gender and racially-based discrimination and misconduct, caused Plaintiff to lose federally-promised benefits and opportunities and to suffer other damages. Defendants' actions and deliberate indifference have caused lifelong injuries and damages that Plaintiff suffered and continues to suffer. Defendant University, Defendant Thomas, and Defendant Napier were all deliberately indifferent to Defendant Monaghan's misconduct, harassment, and discrimination directed at Plaintiff, and thus fostered a safe space for sexual and racially discriminatory conduct to thrive and flourish. If this Court does not grant appropriate relief, Defendants will not stop causing severe and permanent harm to its female and racial minority employees. Plaintiff brings this complaint in her true name and alleges as follows:

## PARTIES

1. Plaintiff De Souza is a 29 year-old female and a resident of Xenia, Ohio. Plaintiff De Souza is biracial and of Brazilian ethnicity. At all times material hereto, Plaintiff De Souza was employed as a Custodial Services Worker by Defendant University.

2. Defendant Wright State University is a public educational institution located in Dayton, Ohio.

3. Defendant University receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

4. Defendant Daniel Monaghan is a Caucasian male and a resident of Ohio. At all times material hereto, Defendant Monaghan was employed as a Supervisor of Wright State University's Custodial Staff (according to Defendant University's website, Defendant Monaghan was specifically Supervisor of "2nd Shift Buildings: Police Campus Wide, Bio 1&2, Health Sci, 1/2 Student Union"). At the time of the filing of this Complaint, Defendant Monaghan remains employed in a supervisory position by Defendant University.

5. Defendant Richard Thomas is a Caucasian male and resident of Ohio. At all times material hereto, Defendant Thomas was employed as Assistant Manager and/or Interim

Custodial Manager of Wright State University's Custodial Staff. At the time of the filing of this Complaint, Defendant Thomas remains employed in a managerial position by Defendant University.

6.  Defendant Sandy Napier is a Caucasian female and resident of Ohio. At all times material hereto, Defendant Napier was employed as Facilities Human Resources Generalist for Facilities Maintenance and Custodial Services by Defendant University. At the time of the filing of this Complaint, Defendant Napier remains employed in the aforementioned position by Defendant University.

7.  At all relevant times, Defendant Monaghan, Defendant Thomas, and Defendant Napier were employees of a publicly-funded educational institution and were acting individually, exploiting their governmental authority and power, while violating and depriving Plaintiff of her constitutional rights.

## JURISDICTION AND VENUE

8.  This case arises under the laws of the United States, specifically Title IX of the Education Amendments of 1972, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

9.  This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. The defendants are residents of the State in which this district is located and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

10. Plaintiff De Souza was hired by Defendant University on July 5, 2016. Her employment began as a temporary position. At the beginning of Plaintiff De Souza's employment with Defendant University, she was assigned to the 4:00 AM shift.

11. On or around the week of July 18, 2016, Plaintiff De Souza's temporary position was changed to a permanent, fulltime position.

12. Upon being hired as a permanent employee by Defendant University, Plaintiff De Souza's work schedule was changed from the shift beginning at 4:00 AM, to a shift beginning at 3:00 PM and ending at roughly 1:30 AM.

13. Corresponding with the alteration in Plaintiff's work schedule, Plaintiff's new supervisor became Daniel Monaghan.

14.     Soon after Plaintiff De Souza began working under the direct supervision of Defendant Monaghan, Defendant Monaghan began engaging in a consistent pattern of gender and racially-based harassment and discriminatory behavior targeted at Plaintiff De Souza.

15.     Monaghan's harassment and objectively discriminatory behavior included, but was not limited to:

a.  Regularly making offensive, racist jokes (specifically targeted against people of Latino and/or Hispanic backgrounds, like Plaintiff);

b.  Regularly making offensive, sexist jokes (specifically targeted against women, like Plaintiff);

c.  Regularly making comments and sharing sentiments that amount to stating that foreigners should not be allowed to live or work in the United States;

d.  Regularly making jokes of an offensive and sexually appropriate nature, including frequent references to male genitalia; and

e.  On at least one occasion Defendant Monaghan made an offensive joke in which he suggested that he and other male Custodial Staff employees should view Plaintiff De Souza while she changed to and/or from her work clothes.

16.     Plaintiff De Souza made her first complaint about Defendant Monaghan's harassing and discriminatory behavior to Defendant Monaghan's superiors and Defendant University's human resources representatives in the fall of 2017.

17.     One evening the building was closed, around 11:00 p.m., female students were still in the hall of the student union playing a game, sardines. Monaghan explained the game to her, that it was like hide and seek but people hide in tight spaces together. He then told Crystal he wished he could play with the game with those girls.

18.     On another occasion, Mr. Monaghan said another male employee, Michael Sanders, had smaller feet than his. He went on to suggest that his "dick" was bigger than Michael's feet and showed his feet to compare foot sizes.

19.     On another occasion, Crystal was out for the evening prior to coming to work. She had planned to change into her uniform in the Student Union's women's locker room. Mr.

Monaghan instead suggested she change in one of the supervisors' offices. He then said, in front of another maintenance worker, Richard, that he might "peek" in to watch her change.

20.    Mr. Monaghan called himself "Daddy Dan" and told Crystal and Erica that he was a "sugar daddy." He referred to himself as "Daddy Dan" throughout the entire time he was Plaintiff's supervisor.

21.    Of the approximately twenty subordinate employees under Daniel Monaghan's supervision, only about four were women  two of whom were in their mid-20's.

22.    Mr. Monaghan would often adjust his genitals on purpose, in an exaggerated way, in front of Plaintiff and other employees, to see what her and her fellow employees' reactions would be. He would do it before meetings in front of staff, during lunch breaks in the break room.  Some male employees would laugh and the female employees were made to feel uncomfortable.

23.    In the early fall of 2017 (on or around October, 2017, Plaintiff De Souza went to Defendant Thomas, then employed as Assistant Manager and/or Interim Custodial Manager of Wright State University's Custodial Staff, and Defendant Napier, then employed as a Facilities Human Resources Generalist for Facilities Maintenance and Custodial Services by Defendant University, to make a report and complaint concerning the gender and racially-based harassment and discrimination she was experiencing from her direct supervisor, Defendant Monaghan.

24.    In this meeting, rather than discussing a way to intervene and prevent the already occurring gender and racially-based harassment and discrimination that Monaghan was directing toward Plaintiff De Souza, Defendants Thomas and Napier simply gave Plaintiff one of Defendant Thomas's business cards, with an alternative phone number written on the back, and suggested that Plaintiff call the number if she experienced harassment and/or discriminatory behavior from Defendant Monaghan again.

25.    Defendant Thomas and Defendant Napier failed to follow proper, federally mandated, Title IX mandatory reporting guidelines in response to the report and complaint that Plaintiff De Souza made to them concerning the harassment and discrimination she was experiencing from her supervisor, Defendant Monaghan. Neither Defendant Thomas nor Defendant Napier referred the incident or any of Plaintiff's complaints to Defendant University's Title IX office and/or coordinator.

26.     Defendant University's Title IX mandatory reporting policy, section 8065.2 "Scope" in Defendant University's online University Policy Index (https://policy.wright.edu/policy/8065-gender-based-harassment-and-violence), states,

> "All employees, students and contractors of Wright State University, in order to be consistent with federal regulations, have a duty to report incidents of gender-based harassment or violence that occur at the Wright State University campuses."

27.     Under federal Title IX law and under Defendant University's own internal policy, Defendant Thomas and Defendant Napier were mandatory reporters.

28.     Defendant Thomas and Defendant Napier were maliciously, willfully, and deliberately indifferent to the report of race and gender-based harassment and discrimination made by Plaintiff De Souza in the fall of 2017.

29.     Because of Defendants Thomas and Napier's deliberate indifference to Plaintiff's report and complaint regarding Defendant Monaghan's offensive and discriminatory workplace conduct and treatment of Plaintiff, Defendant Monaghan's unlawful mistreatment of Plaintiff continued after her report.

30.     In October 2017, soon after the first report and complaint to Defendants Thomas and Napier, Plaintiff De Souza made another report and complaint. This time the complaint was made to the Union that represents Defendant University's Custodial Staff Workers. This complaint concerned Defendant Monaghan maliciously and deliberately skipping Plaintiff De Souza in consideration for which Custodial Staff employees would receive overtime opportunities.

31.     The lack of consideration for overtime opportunities that was afforded to Plaintiff by Defendant Monaghan was another incident in Defendant Monaghan's long established pattern and track record of gender and racially-charged discrimination targeted against Plaintiff De Souza.

32.     Following Plaintiff's report to the Union concerning Defendant Monaghan's treatment of her, including, but not limited to, skipping her in consideration for overtime opportunities, Defendant Monaghan's mistreatment intensified and took on a retaliatory character and dynamic.

33.     Defendant Monaghan's continued mistreatment of Plaintiff De Souza culminated on October 13, 2017, when Plaintiff De Souza went for her normal lunchbreak. That day she chose to eat her packed lunch in in The Hangar, Defendant University's primary cafeteria for students, faculties, and employees.

34.     Because Plaintiff De Souza was working a late shift which involved her working well into the early morning hours (after midnight), when she was eating her packed lunch in The Hangar it was technically closed. Plaintiff was not alone in The Hanger; James Calloway, an individual then employed as a Custodial Floor Care Tech, was present working in The Hangar.

35.     In the midst of Plaintiff's lunch break, Defendant Monaghan stormed into The Hangar and proceeded to loudly and aggressively scold Plaintiff for eating in The Hangar during her lunch break.

36.     There is nothing in Plaintiff's employment agreement or in Defendant University's policy that indicates employees are forbidden from eating their own packed lunches in The Hanger after The Hanger is closed for customers.

37.     At the time of the incident in The Hanger, Plaintiff had endured approximately roughly 16 months (well over a year) of racially and sexually charged abuse, harassment, and discrimination from Defendant Monaghan. Given this context, Plaintiff became emotional as a result of Defendant Monaghan's loud and aggressive confrontation and attempt to intimidate her.

38.     Rather than escalate the confrontation that Defendant Monaghan began in The Hanger, Plaintiff left the premises of The Hangar. She left the building so quickly that she was not able to bring her lunch, meaning she was unable to complete her lunch break.

39.     Plaintiff De Souza called and spoke with the coworker who had been in The Hangar with her at the time of Defendant Monaghan's attempt to intimidate and bully Plaintiff.

40.     Because Plaintiff no longer felt safe working under or around Defendant Monaghan (because of 16 months of gender and racially-based abuse, harassment, and discrimination, and finally the attempt to intimidate her in The Hanger), she sent Defendant Monaghan a text message stating that she needed to leave and would not be returning from lunch break for the rest of her scheduled shift.

41.     On December 7, 2017, Plaintiff De Souza was called into a meeting by Defendant University's Human Resources department regarding the incident that occurred in The Hanger on October 13, 2017.

42.     Between the incident in The Hangar on October 13, 2017 and the December 7, 2017 Human Resources meeting, Defendant Monaghan had concocted a story in which he claimed, with no substantiation, that Plaintiff De Souza committed an act of workplace violence by purposefully stepping on Defendant Monaghan's foot.

43.     This allegation of workplace violence is false and entirely unsubstantiated, except by Defendant Monaghan himself.

44.     On January 23, 2018, Plaintiff De Souza was discharged from her employment with Wright State University's Custodial Staff by Defendant University's Human Resources Department. This was entirely unexpected by Plaintiff, as she did not commit any violent acts against Defendant Monaghan, and more importantly, because she was actually the victim of Defendant Monaghan's gender and racially-based aggression, harassment, and unlawful discriminatory behavior.

45.     Despite the complete and utter lack of substantiation of the allegation of workplace violence committed by Plaintiff, Defendant Monaghan's allegation of workplace violence was the reason given for Plaintiff De Souza's dismissal.

46.     Defendant Monaghan faced no punishment, discipline, or reprimand for the 16 months of malicious, willful, and deliberate gender and racially-based harassment of Plaintiff De Souza, and continues his employment with Defendant University to this day.

47.     Plaintiff has satisfied all necessary conditions precedent to bringing Title VII claims.

48.     Attached to this Complaint as Exhibit A is a copy of the Right to Sue letter Plaintiff De Souza received from the Equal Employment Opportunity Commission regarding her charges of Title VII sexual discrimination and sexual harassment against Defendant.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANT WRIGHT STATE UNIVERSITY
### Deliberate Indifference in Violation of Title IX

49.     Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

50.     At all relevant times, Defendant University received federal funding and assistance.

51.     Title IX prohibits sex discrimination by recipients of federal education funding.

52.     Defendant University agreed to comply with all applicable federal statutes relating to nondiscrimination by recipients of federal financial assistance.

53.     A private right of action to enforce Title IX's guarantees encompasses deliberate indifference to sexual harassment of an employee by another employee.

54.     Defendant Monaghan's persistent verbal harassing and use of adverse employment actions to harm Plaintiff De Souza constituted gender-based harassment and discrimination.

55.     Plaintiff De Souza's October 2017 report to Defendant Thomas and Defendant Napier, who are both mandatory reporters under Title IX, gave Defendant University actual notice of Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

56.     Defendant Thomas and Defendant Napier both had a duty to report Plaintiff's De Souza's report concerning Defendant Monaghan to Defendant University's appropriate Title IX officials.

57.     Defendant Thomas and Defendant Napier were in a position to vindicate Plaintiff's rights.

58.     Defendant Thomas and Defendant Napier had authority to address the discrimination.

59.     Defendant Thomas had authority to institute corrective measures.

60.     Defendant Thomas and Defendant Napier had a non-discretionary duty to notify Defendant University's Title IX coordinator as soon as possible about what Plaintiff De Souza told them about the gender-based harassment and discrimination she was experiencing from Defendant Monaghan. Both Defendant Thomas and Defendant Napier failed to perform that non-discretionary duty.

61.     It was reasonable for Plaintiff De Souza to expect that her Defendant Thomas, her manager, who her harasser was subordinate to, and who had a duty to report Title IX-related misconduct, would act in accordance with the law.

62.     Defendant Thomas was deliberately indifferent to the gender-based harassment that Plaintiff reported.

63.     Defendant Thomas acted with gender-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him if anything else occurred (and ignoring what had already occurred), and by failing to report Defendant Monaghan's misconduct to Defendant University's Title IX coordinator.

64.     Defendant Thomas's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

65.     Defendant Thomas's failure to act violated Defendant University's written policy and federal law.

66.     It was reasonable for Plaintiff De Souza to expect that her Defendant Napier, a human resources employee, and an employee who had a duty to report Title IX-related misconduct, would act in accordance with the law.

67.     Defendant Napier was deliberately indifferent to the gender-based harassment that Plaintiff reported.

68.     Defendant Napier acted with gender-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him if anything else occurred (and ignoring what had already occurred), and by failing to report that report up to Defendant University's Title IX coordinator.

69.     Defendant Napier's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

70.     Defendant Napier's failure to act violated Defendant University's written policy and federal law.

71.     Defendant Thomas and Defendant Napier's failure to act reasonably and appropriately regarding Plaintiff's October 2017 report concerning Defendant Monaghan tacitly endorsed Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

72. Defendant Thomas and Defendant Napier acted with gender-based discriminatory intent in failing to take remedial steps to protect Plaintiff and address her Title IX complaint.

73. Defendant Thomas and Defendant Napier's failure to take remedial steps to protect Plaintiff and address her Title IX complaint violated University policy and federal law.

74. Defendant Thomas and Defendant Napier's failure to take remedial steps to protect Plaintiff and address her Title IX complaint tacitly endorsed Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

75. Defendant University had a duty to ensure that Defendant Thomas and Defendant Napier understood how to respond to reports of Title IX violations.

76. Defendant University's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies responding to reports of sexual misconduct made Plaintiff increasingly vulnerable to subsequent gender-based harassment and discrimination by Defendant Monaghan.

77. Plaintiff suffered as a direct and proximate result of Defendant University's failure to effectively implement its own written policies regarding responding to gender-based misconduct allegations.

78. Defendant University acted with gender-based discriminatory intent in failing to respond to Plaintiff's complaint. Defendant University's ineffectual implementation of its written policies made Plaintiff more vulnerable to continued gender-based harassment and discrimination, as well as retaliation, for reporting that harassment and discrimination.

79. Defendant University's failure to take appropriate action in response to Plaintiff's report violated Defendant University's written policy and federal law.

80. Defendant University's failure to act tacitly endorsed Defendant Monaghan's treatment of Plaintiff.

81. Defendant University failed to follow its own written policy in response to Plaintiff's Title IX report that she was being harassed and discriminated against on the basis of her gender.

82. Defendant Monaghan, Defendant Thomas, and Defendant Napier's actions unreasonably interfered with Plaintiff's employment at Defendant University and with her physical, mental, and emotional wellbeing.

83.     As a direct and proximate result of these unlawful and malicious acts, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial.

84.     As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

## SECOND CLAIM FOR RELIEF
## AGAINST DEFENDANT WRIGHT STATE UNIVERSITY
### Deliberate Indifference (Failure to Report) in Violation of Title IX

85.     Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

86.     The conduct by Defendant Monaghan outlined in this Complaint violated Defendant University's written policy and federal law. The deliberate indifference shown by Defendants Thomas and Napier to Plaintiff's reports and complaints about Defendant Monaghan's conduct violated Defendant University's written policy and federal Title IX law.

87.     Defendant University's response to knowledge regarding Defendant Monaghan's treatment of Plaintiff was deliberately indifferent.

88.     Defendant University's lack of oversight regarding how Defendant Thomas managed Wright State's Custodial Staff was deliberately indifferent.

89.     The sexual harassment committed by Defendant Monaghan against Plaintiff was committed while he was acting as an agent and representative of Defendant University and after Defendant University had actual knowledge of gender-based harassment complaints against Defendant Monaghan.

90.     Defendant University's deliberate indifference was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

91.     As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

## THIRD CLAIM FOR RELIEF
## AGAINST DEFENDANT WRIGHT STATE UNIVERSITY
### Retaliation in Violation of Title IX

92.     Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

93.     At all relevant times, Defendant University received federal funding and assistance.

94.    Title IX prohibits retaliation in response to reporting discrimination under Title IX.

95.    Defendant University agreed to comply with all applicable federal statutes relating to retaliation under Title IX.

96.    Defendant University had notice when it accepted federal funding under Title IX that the institution would be liable for deliberate indifference to retaliation against employees for reporting sexual abuse or advocating for Title IX complainants.

97.    A private right of action to enforce Title IX's guarantees encompasses retaliation for advocating for the Title IX rights of oneself and others.

98.    Defendant Monaghan retaliated against Plaintiff because she reported gender-based harassment and discrimination. Defendant Monaghan, acting as a representative of Defendant University retaliated against Plaintiff after her October 2017 report by continuing his gender-based harassment and discrimination against her and by skipping her in consideration for overtime opportunities.

99.    Defendant University retaliated against Plaintiff because she reported gender-based harassment and discrimination. Defendant University retaliated against Plaintiff when Defendant University discharged Plaintiff after a biased misconduct proceeding involving Plaintiff and Defendant Monaghan. Defendant University treated Plaintiff's harasser more favorably than they treated Plaintiff, the victim of Defendant Monaghan's gender-based harassment and discrimination.

100.    Defendant University, Defendant Monaghan, Defendant Thomas, and Defendant Napier's conduct would dissuade a person of ordinary fitness from engaging in protected activity.

101.    Defendant University, through the actions of its agents and representatives, retaliated against Plaintiff.

102.    As a result of Defendant University's deliberate indifference, Plaintiff was subjected to continued and repeated gender-based harassment and discrimination at the hands of Defendant Monaghan after her initial report of gender-based mistreatment.

103.    Defendant Monaghan was aware that Plaintiff had made a complaint about him when he continued his gender-based harassment and discrimination targeted at Plaintiff and skipped her in consideration for overtime opportunities.

104.    Defendant University was aware that Plaintiff had made a complaint about Defendant Monaghan when they proceeded to terminate her employment after a biased investigation into an incident involving Plaintiff and her harasser, Defendant Monaghan.

105.    Defendant University's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies regarding responding to reports of sexual misconduct made Plaintiff  more vulnerable to the retaliation that she faced as a result of reporting her mistreatment.

106.    As a direct and proximate result of these unlawful and malicious acts, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial.

107.    As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

### FOURTH CLAIM FOR RELIEF
### AGAINST DEFENDANT WRIGHT STATE UNIVERSITY
### Hostile Work Environment, Sexual Harassment, and Gender Discrimination in Violation of Title VII

108.    Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

109.    Defendant Monaghan's persistent verbal harassment and use of adverse employment actions to harm Plaintiff De Souza constituted gender-based harassment and discrimination and, because Defendant Monaghan was Plaintiff's direct supervisor and was able to make hiring and firing decisions concerning Plaintiff and discipline Plaintiff, Defendant University is liable for Defendant Monaghan's actions pursuant to Title VII.

110.    Plaintiff De Souza's October 2017 report to Defendant Thomas and Defendant Napier gave Defendant University actual notice of Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

111.    Defendant Thomas and Defendant Napier were in a position to vindicate Plaintiff's rights.

112.    Defendant Thomas and Defendant Napier had authority to address the discrimination.

113. Defendant Thomas had authority to institute corrective measures.

114. Plaintiff De Souza expected Defendant Thomas to act in accordance with Defendant University's written policy.

115. It was reasonable for Plaintiff De Souza to expect that her Defendant Thomas, her manager, who her harasser was subordinate to, would act in accordance with Defendant University's written policy.

116. Plaintiff De Souza expected Defendant Thomas to act in accordance with the law.

117. It was reasonable for Plaintiff De Souza to expect that her Defendant Thomas, her manager, who her harasser was subordinate to, would act in accordance with the law.

118. Defendant Thomas was deliberately indifferent to the gender-based harassment that Plaintiff reported.

119. Defendant Thomas acted with gender-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him if anything else occurred (and ignoring what had already occurred), instead of legitimately investigating and addressing the gender-based harassment and discrimination Plaintiff reported.

120. Defendant Thomas's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

121. Defendant Thomas's failure to act violated Defendant University's written policy and federal law.

122. Plaintiff De Souza expected Defendant Napier to act in accordance with Defendant University's written policy.

123. It was reasonable for Plaintiff De Souza to expect that her Defendant Napier, a human resources employee, would act in accordance with Defendant University's written policy.

124. Plaintiff De Souza expected Defendant Napier to act in accordance with the law.

125. It was reasonable for Plaintiff De Souza to expect that her Defendant Napier, a human resources employee, would act in accordance with the law.

126. Defendant Napier was deliberately indifferent to the gender-based harassment that Plaintiff reported.

127. Defendant Napier acted with gender-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him

if anything else occurred (and ignoring what had already occurred), instead of legitimately investigating and addressing the gender-based harassment and discrimination Plaintiff reported.

128. Defendant Napier's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

129. Defendant Napier's failure to act violated Defendant University's written policy.

130. Defendant Thomas and Defendant Napier's failure to act reasonably and appropriately regarding Plaintiff's October 2017 report concerning Defendant Monaghan tacitly endorsed Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

131. Defendant Thomas and Defendant Napier acted with gender-based discriminatory intent in failing to take remedial steps to protect Plaintiff from gender-based harassment and discrimination.

132. Defendant Thomas and Defendant Napier's failure to take remedial steps to protect Plaintiff tacitly endorsed Defendant Monaghan's gender-based harassment and discrimination against Plaintiff.

133. Defendant University's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies responding to reports of sexual misconduct made Plaintiff increasingly vulnerable to subsequent gender-based harassment and discrimination by Defendant Monaghan.

134. Plaintiff suffered as a direct and proximate result of Defendant University's failure to effectively implement its own written policies regarding responding to gender-based misconduct allegations.

135. Defendant University acted with gender-based discriminatory intent in failing to respond to Plaintiff's complaint. Defendant University's ineffectual implementation of its written policies made Plaintiff more vulnerable to continued gender-based harassment and discrimination, as well as retaliation, for reporting that harassment and discrimination.

136. Defendant University's failure to take appropriate action in response to Plaintiff's report violated Defendant University's written policy and federal law.

137. Defendant University's failure to act tacitly endorsed Defendant Monaghan's treatment of Plaintiff.

138.   Defendant Monaghan, Defendant Thomas, and Defendant Napier's actions unreasonably interfered with Plaintiff's employment at Defendant University and with her physical, mental, and emotional wellbeing.

139.   As a direct and proximate result of these unlawful and malicious acts, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial.

140.   As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

**FIFTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT WRIGHT UNIVERSITY**
**Racial Discrimination in Violation of Title VII**

141.   Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

142.   Defendant Monaghan's persistent verbal harassing and use of adverse employment actions to harm Plaintiff De Souza constituted racially-based harassment and discrimination.

143.   Plaintiff De Souza's October 2017 report to Defendant Thomas and Defendant Napier gave Defendant University actual notice of Defendant Monaghan's racially-based harassment and discrimination against Plaintiff.

144.   Defendant Thomas and Defendant Napier were in a position to vindicate Plaintiff's rights.

145.   Defendant Thomas and Defendant Napier had authority to address the discrimination.

146.   Defendant Thomas had authority to institute corrective measures.

147.   Defendant Thomas was deliberately indifferent to the racially-based harassment that Plaintiff reported.

148.   Defendant Thomas acted with gender-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him if anything else occurred (and ignoring what had already occurred), instead of legitimately investigating and addressing the gender-based harassment and discrimination Plaintiff reported.

149.   Defendant Thomas's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

150.    Defendant Thomas's failure to act violated Defendant University's written policy and federal law.

151.    It was reasonable for Plaintiff De Souza to expect that Defendant Napier, a human resources employee, would act in accordance with Defendant University's written policy.

152.    It was reasonable for Plaintiff De Souza to expect that her Defendant Napier, a human resources employee, would act in accordance with the law.

153.    Defendant Napier was deliberately indifferent to the racially-based harassment that Plaintiff reported.

154.    Defendant Napier acted with racially-based discriminatory intent in responding to Plaintiff's October 2017 report by offering her a business card and instructing her to contact him if anything else occurred (and ignoring what had already occurred), instead of legitimately investigating and addressing the gender-based harassment and discrimination Plaintiff reported.

155.    Defendant Napier's response to Plaintiff's October 2017 report was insufficient and clearly unreasonable in light of the known circumstances.

156.    Defendant Napier's failure to act violated Defendant University's written policy.

157.    Defendant Thomas and Defendant Napier's failure to act reasonably and appropriately regarding Plaintiff's October 2017 report concerning Defendant Monaghan tacitly endorsed Defendant Monaghan's racially-based harassment and discrimination against Plaintiff.

158.    Defendant Thomas and Defendant Napier acted with racially-based discriminatory intent in failing to take remedial steps to protect Plaintiff from racially-based harassment and discrimination.

159.    Defendant Thomas and Defendant Napier's failure to take remedial steps to protect Plaintiff tacitly endorsed Defendant Monaghan's racially-based harassment and discrimination against Plaintiff.

160.    Defendant University's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies responding to reports of racially-based misconduct made Plaintiff increasingly vulnerable to subsequent gender-based harassment and discrimination by Defendant Monaghan.

161.     Plaintiff suffered as a direct and proximate result of Defendant University's failure to effectively implement its own written policies regarding responding to racially-based misconduct allegations.

162.     Defendant University acted with racially-based discriminatory intent in failing to respond to Plaintiff's complaint. Defendant University's ineffectual implementation of its written policies made Plaintiff more vulnerable to continued racially-based harassment and discrimination, as well as retaliation, for reporting that harassment and discrimination.

163.     Defendant University's failure to take appropriate action in response to Plaintiff's report violated Defendant University's written policy and federal law.

164.     Defendant University's failure to act tacitly endorsed Defendant Monaghan's treatment of Plaintiff.

165.     Defendant Monaghan, Defendant Thomas, and Defendant Napier's actions unreasonably interfered with Plaintiff's employment at Defendant University and with her physical, mental, and emotional wellbeing.

166.     As a direct and proximate result of these unlawful and malicious acts, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial.

167.     As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

### SIXTH CLAIM FOR RELIEF
### AGAINST DEFENDANT WRIGHT STATE UNIVERSITY
### Retaliation in Violation of Title VII

168.     Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

169.     Defendant University is liable for deliberate indifference to retaliation against employees for reporting gender or racially-based harassment or discrimination, in violation of Title VII.

170.     Defendant Monaghan retaliated against Plaintiff because she reported gender and racially-based harassment and discrimination. Defendant Monaghan, acting as a representative of Defendant University retaliated against Plaintiff after her October 2017 report by continuing his gender-based harassment and discrimination against her and by skipping her in consideration for overtime opportunities.

171. Defendant University retaliated against Plaintiff because she reported gender and racially-based harassment and discrimination. Defendant University retaliated against Plaintiff when Defendant University discharged Plaintiff after a biased misconduct proceeding involving Plaintiff and Defendant Monaghan. Defendant University treated Plaintiff's harasser more favorably than they treated Plaintiff, the victim of Defendant Monaghan's gender and racially-based harassment and discrimination.

172. Defendant University, Defendant Monaghan, Defendant Thomas, and Defendant Napier's conduct would dissuade a person of ordinary fitness from engaging in protected activity.

173. Defendant University, through the actions of its agents and representatives, retaliated against Plaintiff.

174. As a result of Defendant University's deliberate indifference, Plaintiff was subjected to continued and repeated gender and racially-based harassment and discrimination at the hands of Defendant Monaghan after her initial report of gender-based mistreatment.

175. Defendant Monaghan was aware that Plaintiff had made a complaint about him when he continued his gender and racially-based harassment and discrimination targeted at Plaintiff and skipped her in consideration for overtime opportunities.

176. Defendant University was aware that Plaintiff had made a complaint about Defendant Monaghan when they proceeded to terminate her employment after a biased investigation into an incident involving Plaintiff and her harasser, Defendant Monaghan.

177. Defendant University's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies regarding responding to reports of gender and racially-based misconduct made Plaintiff more vulnerable to the retaliation that she faced as a result of reporting her mistreatment.

178. As a direct and proximate result of these unlawful and malicious acts, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial.

179. As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

## SEVENTH CLAIM FOR RELIEF
## AGAINST DANIEL MONAGHAN IN HIS INDIVIDUAL CAPACITY

**Sexual Harassment in Violation of Fourteenth Amendment of the Constitution of the
United States of America
(Pursuant to 42 U.S.C. § 1983)**

180.    Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

181.    Under the Fourteenth Amendment, Plaintiff had the right as a public university employee to personal security and Equal Protection of Laws.

182.    Defendant Monaghan harassed and discriminated against Plaintiff on the basis of her gender and race while he was a state actor acting in his individual capacity under the color of state law.

183.    Defendant Monaghan subjected Plaintiff to violations of her right to personal security and Equal Protection of Laws by subjecting her to gender and racially-based harassment and discrimination throughout the time of her employment with Defendant University in which she was directly subordinate to Defendant Monaghan.

184.    Defendant Monaghan subjected Plaintiff to sexual harassment and gender and racially-based discriminatory actions that were so severe and objectively offensive that it violated Plaintiff De Souza's constitutional rights.

185.    Defendant Monaghan was in a direct supervisory and evaluative role over Plaintiff De Souza.

186.    Plaintiff De Souza has had her employment and life disrupted, and has personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Monaghan's inappropriate and malicious behavior.

187.    Defendant Monaghan's conduct as described herein violated Plaintiff De Souza's clearly established constitutional rights of which a reasonable person should have known.

188.    Defendant Monaghan's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

189.    As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

**EIGHTH CLAIM FOR RELIEF
AGAINST DANIEL MONAGHAN IN HIS INDIVIDUAL CAPACITY
Sexual Harassment and Discrimination in Violation of the Fourteenth Amendment to the
Constitution of the United States of America
(Pursuant to 42 U.S.C. § 1983)**

190.     Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

191.     Under the Fourteenth Amendment, Plaintiff had the right as a public university employee to personal security and Equal Protection of Laws.

192.     Defendant Monaghan sexually harassed Plaintiff De Souza while he was a state actor acting in his individual capacity under the color of state law.

193.     Defendant Monaghan subjected Plaintiff De Souza to violations of her right to personal security and Equal Protection of Laws by subjecting her to gender and racially-based harassment and discrimination throughout the time of her employment with Defendant University in which she was directly subordinate to Defendant Monaghan.

194.     Defendant Monaghan subjected Plaintiff to sexual harassment and gender and racially-based discriminatory actions that were so severe and objectively offensive that it violated Plaintiff De Souza's constitutional rights.

195.     Defendant Monaghan was in a direct supervisory and evaluative role over Plaintiff De Souza.

196.     The environment created from the conduct of Defendant Monaghan was hostile-based on the circumstances, including but not limited to the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

197.     The environment resulting from Defendant Monaghan's conduct also constitutes a hostile environment. For Plaintiff De Souza, her employment at Defendant University became a sexually and racially hostile environment where her harasser was allowed to victimize her with impunity for the majority of her employment at Defendant University.

198.     Defendant Monaghan's conduct as described herein violated Plaintiff De Souza's clearly established constitutional rights of which a reasonable person should have known.

199.     Defendant Monaghan's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

200.     As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

**NINTH CLAIM FOR RELIEF**
**AGAINST RICHARD THOMAS IN HIS INDIVIDUAL CAPACITY**

**Deliberate Indifference in Violation of the Fourteenth Amendment to the Constitution of
the United States of America
(Pursuant to 42 U.S.C. § 1983)**

201.    Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

202.    Under the Fourteenth Amendment, Plaintiff had the right as a public university employee to personal security and Equal Protection of Laws.

203.    At all relevant times, Defendant Thomas was a state actor acting in his individual capacity under color of state law.

204.    Defendant Thomas failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment when he deliberately ignored reports about Defendant Monaghan's gender and racially-based misconduct and/or deliberately failed to forward aforementioned reports to the Defendant University's appropriate Title IX officials.

205.    Defendant Thomas violated Plaintiff's right to equal protection by promoting a climate within Defendant University's Custodial Staff that allows unlawful gender and racially-based harassment and discrimination to flourish unchecked, depriving Plaintiff of federal employment opportunities.

206.    Defendant Thomas failed to follow his mandatory reporting duties as outlined in Title IX by failing to take Plaintiff's initial complaint and report about gender and racially-based discrimination to the appropriate Title IX officials on Defendant University's campus.

207.    Defendant Thomas's conduct constituted disparate treatment of female Custodial Staff employees and had a disparate impact on female and minority Custodial Staff employees.

208.    Defendant Thomas's conduct as described herein violated Plaintiff De Souza's clearly established constitutional rights of which a reasonable person should have known.

209.    Defendant Thomas's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

210.    As a direct and proximate result of Defendant Thomas's deliberate indifference, Plaintiff De Souza has suffered serious harm, emotional distress and other damages.

211.    As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

**TENTH CLAIM FOR RELIEF**

**AGAINST SANDY NAPIER IN HER INDIVIDUAL CAPACITY**
**Deliberate Indifference in Violation of the Fourteenth Amendment to the Constitution of**
**the United States of America**
**(Pursuant to 42 U.S.C. § 1983)**

212.    Plaintiff De Souza re-alleges all prior paragraphs of the Complaint as if set out here in full.

213.    Under the Fourteenth Amendment, Plaintiff had the right as a public university employee to personal security and Equal Protection of Laws.

214.    At all relevant times, Defendant Thomas was a state actor acting in her individual capacity under color of state law.

215.    Defendant Napier failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment when she deliberately ignored reports about Defendant Monaghan's gender and racially-based misconduct and/or deliberately failed to forward aforementioned reports to the Defendant University's appropriate Title IX officials.

216.    Defendant Napier violated Plaintiff's right to equal protection by promoting a climate within Defendant University's Custodial Staff that allows unlawful gender and racially-based harassment and discrimination to flourish unchecked, depriving Plaintiff of federal employment opportunities.

217.    Defendant Napier failed to follow her mandatory reporting duties as outlined in Title IX by failing to take Plaintiff's initial complaint and report about gender and racially-based discrimination to the appropriate Title IX officials on Defendant University's campus.

218.    Defendant Napier's conduct constituted disparate treatment of female Custodial Staff employees and had a disparate impact on female and minority Custodial Staff employees.

219.    Defendant Napier's conduct as described herein violated Plaintiff De Souza's clearly established constitutional rights of which a reasonable person should have known.

220.    Defendant Napier's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiff's rights such that punitive damages are appropriate.

221.    As a direct and proximate result of Defendant Napier's deliberate indifference, Plaintiff De Souza has suffered serious harm, emotional distress and other damages.

222.    As a result of the foregoing, Plaintiff De Souza suffered extensive damages.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants and asks the Court for the following relief:

(a) Specifically in regards to Defendant Monaghan's gender and racially-based harassment and discrimination towards Plaintiff (the 12th and 13th claims for relief), Plaintiff demands judgement against Defendant Monaghan for a sum in excess of Fifty Thousand Dollars ($50,000.00) commensurate with the damages she sustained, plus the costs of this suit and any other relief that the court considers proper.

(b) Damages in amounts to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of the gender and racially-based harassment and discriminatory actions; damages for deprivation of equal access to the employment and/or educational benefits and opportunities provided by Defendant Wright State University; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present and future enjoyment of life, past, present, and future medical expenses, and lost earnings and earning capacity;

(c) Other Compensatory Damages;

(d) Injunctive relief as this Court deems necessary and proper;

(e) A declaratory judgment that Defendants violated Plaintiff's Constitutional rights;

(f) That this Court Order Defendant University to provide mandatory training for all mandatory reporters using trauma informed principles;

(g) That this Court Order Defendant University to dismiss Defendant Monaghan from his employment with Wright State University and not permit him on or near Campus;

(h) That Defendant University be ordered to provide a public statement that it has failed to maintain a safe environment for victims of sexual misconduct;

COMPLAINT AND DEMAND FOR JURY TRIAL

(i) That Defendant University be ordered to create a system of reporting sexual misconduct that is less intimidating for the most vulnerable members of the community, including non-academic employees, such as Custodial Staff.

(j) That Defendant University be ordered to provide a public statement that it will not tolerate any retaliation against victims and reporters of sexual misconduct;

(k) Other injunctive relief to be determined at trial requiring Defendant University to comply with federal law under Title IX;

(l) Pre- and post-judgment interest;

(m) Costs;

(n) Punitive Damages;

(o) Attorney's fees pursuant to all relevant statutes and law including, but not limited to, 42 U.S.C. § 1988(b); and

(p) Such other and further relief as the Court may deem just and proper.


DATED: January 18, 2019        Respectfully submitted,


_s/ Michael L. Fradin_
Attorney for Plaintiffs

LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

# EXHIBIT A

COMPLAINT AND DEMAND FOR JURY TRIAL

OC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Crystal L. De Souza
1410 Sioux Dr.
Xenia, OH 45385

From: Cincinnati Area Office
John W. Peck Fed. Bldg
550 Main St  Room 10-019
Cincinnati, OH 45202

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | | Telephone No. |
|---|---|---|---|
| 473-2018-01541 | Daniel F. Williams, Investigator | | (513) 357-5599 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Melanie L. Breen/MS*

OCT 2 2 2018

| Enclosures(s) | Melanie L. Breen, Area Office Director | (Date Mailed) |

cc: Larry Chan
General Counsel
WRIGHT STATE UNIVERSITY
3640 Colonel Glenn Hwy
282 University Hall
Dayton, OH 45435

COMPLAINT AND DEMAND FOR JURY TRIAL